UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**STEFON FRESHLEY,**<br><br>**Defendant.** | **Crim. Case No. 24-CR-520-4 (TJK)** |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

On August 30, 2024, Mr. Freshley was sentenced to ninety months incarceration for his role in the shooting of a 14-year-old boy and his father. In 2019, while detained at the D.C. Jail awaiting resolution of that case, Mr. Freshley was indicted for Assault with Intent to Kill for his role in a jail stabbing. Finally, while awaiting resolution of charges in both cases, Mr. Freshley was conspiring with fellow detainees, correctional officers, and civilians outside the jail to smuggle a knife, dangerous drugs including Fentanyl, and cellular phones into the Central Detention Facility. An audit of the D.C. Jail during the period of Mr. Freshley's offense found the rate of overdose deaths at the facilities to be 10 times the national average at U.S. jails. Ex. 1. During the audit period, there were also 76 incidents of contraband drugs recovered and Narcan was administered 148 times. *Id*. These numbers are shocking and underscore the seriousness of Mr. Freshley's actions. Given his criminal history and the seriousness of this offense, and in consideration of the factors set forth in 18 U.S.C. § 3553(a), the Court should sentence him to 37 months incarceration to run consecutively to his current sentence.

**I.     Background**

From March 8, 2019, through the period of the instant offense, Mr. Freshley was incarcerated in the Central Detention Facility ("CDF") of the D.C. Department of Corrections

("DOC") awaiting trial in two separate Assault with Intent to Kill cases in D.C. Superior Court. During the relevant period, Mr. Freshley was incarcerated in either the Northwest-1("NW-1") or Southwest-1 ("SW-1") housing units, which are maximum security units at CDF. During this period, Mr. Freshley was housed with other detainees from the Clay Terrace neighborhood of Washington D.C., to include Darius Robertson and Marcel Vines (collectively with Mr. Freshley, the "Clay Terrace Detainees").

Beginning by at least February 18, 2024—but likely much earlier—the Clay Terrace Detainees sought to bring dangerous contraband including weapons and controlled substances into CDF. They recruited Correctional Officer Rashaad Roper and Kiya Holland—a close confidant of Mr. Robertson—to assist in bringing the contraband into the jail. On February 18, 2024, Ms. Holland left a bag containing two Tupperware containers filled with contraband on a table at the staff entrance to CDF. About an hour later, Officer Roper went to the staff entrance and grabbed the bag left by Ms. Holland. Officer Roper took the Tupperware containers through the security screening room. Officer Roper placed the bag through the x-ray machine but there was no correctional officer monitoring the screen as the bag passed through. Officer Roper took the two Tupperware containers to the employee locker room, where he left them for the night.

The next day, on February 19, 2024, Officer Roper went to his locker and transferred the contraband from the Tupperware to a white Styrofoam food container. He then brought the container into NW-1 and set the container on a pushcart with two large yellow and red coolers on it inside an empty hallway. Minutes later, the Clay Terrace Detainees entered the hallway, and Mr. Vines took possession of the container containing the contraband.





Mr. Vines then brought the food container into his jail cell, followed by Mr. Robertson and Mr. Freshley.

Officer Roper did not return to work until February 26, 2024. That day, Officer Roper returned to the employee locker room. He retrieved the other Tupperware container and transferred contraband from that container into another white disposable food container. He then met with Mr. Vines inside a room near the NW-1 correctional officer security post. Mr. Vines took the disposable food container containing contraband and walked with it into his assigned cell.

On February 28, 2024, at approximately 10:56 a.m., Ms. Holland returned to CDF with

another bag containing two Tupperware containers. She left the bag on the same table for Officer Roper. However, before Officer Roper could retrieve the containers for the Clay Terrace Detainees, the bag was intercepted by DOC Office of Investigative Services. Collectively, the containers contained: (1) one switchblade knife; (2) one Apple iPhone; (3) a white USB iPhone charger; (4) two pairs of eyeglasses; (5) a bundle of marijuana wrapped in clear saranwrap; (6) tobacco wrapped in clear saranwrap; (7) several sheets of white rolling papers; (8) a pair of gambling dice; (9) three white sheets of bonded paper that were damp and contained MDMB-4en-PINACA—a Schedule I Controlled Substance,; (10) two saran-wrapped packages of marijuana; and (11) five individually wrapped packages in clear saranwrap containing approximately 100 cigarettes. Officer Roper was placed on administrative leave.

With Officer Roper out of the unit and on administrative leave, Mr. Freshley and the other Clay Terrace Detainees sought to recruit a new officer to smuggle contraband into CDF. Four months later, they found their man in Officer Bryan Kinard. On June 30, 2024, July 7, 2024, and July 21, 2024, Officer Kinard obtained Tupperware containers filled with food from Ms. Holland or LaTara Brown outside the jail and brought them to Mr. Freshley inside CDF. Concealed inside the food was contraband. Each incident was captured on surveillance footage, and the July 21st incident was captured on Officer Kinard's body-worn camera. Officer Kinard can be seen on the July 21st video with audio: (1) providing his license plate number to the Clay Terrace Detainees so that their associate outside the jail could drop the contraband in Officer Kinard's vehicle; (2) coordinating with the Clay Terrace Detainees as to when they would like him to take his break and obtain the contraband from his vehicle; and (3) providing the contraband to Mr. Vines and then Mr. Freshley and describing the "heavy" weight of the Tupperware container. Prior to the July 21st smuggling incident, Mr. Freshley had several recorded jail calls with a number ending in -4646 on

July 19, 2024. The user of the number ending in -4646 discussed going to a store to get two phones reset and unlocked. Once that was completed, the user of the number ending -4646 was told by Mr. Freshley to contact another woman.

Two days after the July 21st smuggling incident, two photographs were posted from Mr. Freshley's known Instagram account, "___steflover" despite the fact that he was detained at CDF.[1] The first photograph was a picture of Mr. Vines and his co-defendant in the courtroom during jury selection of their murder trial before Judge Friedrich that had begun days earlier. The second photograph was a black screen overlayed with text, stating "It ain't going to be safe telling on them Boyz [emojis]."



That post prompted significant new security measures at the courthouse. Additionally, it prompted law enforcement to review surveillance footage from the jail and eventually to identify Officer Kinard as the individual smuggling items in on behalf of the Clay Terrace Detainees.

---

[1] Of note, the profile picture for the "___steflover" account is a photograph of Freshley and Vines, which appears to have been taken inside the D.C. jail.

On July 25, 2024, DOC conducted two searches of the Clay Terrace Detainee's unit for contraband. Inside NW-1, DOC staff found, among other things, approximately: (1) 269 blue pills (including 120 from Mr. Vines' cell), which tested positive for fentanyl; (2) 60 cigarettes soaked in an unknown liquid (including 40 in Mr. Vines' cell); (3) 255 suboxone strips (170 in Mr. Vines' cell); (4) 7 pieces of paper soaked in an unknown liquid substance; (5) three cellular phones; and (6) cigarettes.

II.     **Sentencing Guidelines**

The parties agree that the following guidelines apply.

| | |
|---|---|
| U.S.S.G. § 2D1.1(a)(5) (Cross-Reference from 2P1.2(c)) – Base Offense – 8 to 16 grams of Fentanyl | 16 |
| U.S.S.G. § 2D1.1(b)(4) Object of offense – distribution of a controlled substance in a prison | 2 |
| Acceptance of Responsibility | -3 |
| Total | 15 |

The defendant is in Criminal History Category of 11 for the following criminal convictions:

| Charge/Court | Disposition Date and Sentence | U.S.S.G. § | Criminal History Pts. |
|---|---|---|---|
| Poss. Liquid PCP – DCSC – 2015-CF2-3422 | 8/15/2016 – 12 months ESS all | 4A1.1(c) | 1 |
| FIP – DCSC – 2016-CF2-12526 | 9/5/2017 – 30 months ESS all but 18 montsh | 4A1.1(a) | 3 |
| Theft 2nd Degree – DCSC 2016-CF3-18442 | 9/5/2017 – 90 days ESS all but 30 | 4A1.1(c) | 1 |
| AWIK – DCSC - 2019-CF1-3262 | 8/30/2024 – 90 months | 4A1.1(a) | 3 |
| Under sentence when committed offense | | 4A1.1(d) | 1 |
| | | | 9 |

Accordingly, Freshley's Criminal History Category is to be IV (the "Estimated Criminal History Category").

Based upon the Offense Level and the Criminal History Category set forth above, Freshley's Sentencing Guidelines range is 30 months to 37 months. In addition, the parties agree that pursuant to U.S.S.G. § 5E1.2, should the Court impose a fine, at Guidelines level 15, the applicable fine range is $7,500 to $75,000.

### III.    The 18 U.S.C. § 3553(a) Factors

The Court must impose a sentence that is sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational treatment. 18 U.S.C. § 3553(a)(2). The Court also must consider the history and characteristics of the defendant, the kinds of sentences available, the sentencing range under the guidelines, any relevant policy statements, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(6).

Due to the severity of Freshley's criminal history and convictions, as well as the seriousness of smuggling fentanyl and cellular devices used to obstruct justice into the jail, the government believes that the factors support the court issuing a sentence at the top of the sentencing guidelines range.

### A. The Nature and Circumstances of the Offense and the Need for the Sentence to Reflect the Seriousness of the Offense

Mr. Freshley's offense was undoubtedly serious. Bringing controlled substances into an environment with a high population of individuals with substance-abuse problems can have devastating effects. Additionally, while the phones smuggled into the jail may appear relatively innocuous, in this case, they were anything but. The evidence in this case suggests that Mr.

Freshley used one of the contraband cellphones to intimidate witnesses during Vines' murder trial before Judge Friedrich in 19-CR-166 (DLF). This and other threats to witnesses made throughout the case led to a significant increase in security at the courthouse and substantial work on the part of law enforcement to ensure the safety of the witnesses.

Not only did the defendant's actions endanger the lives of his fellow detainees and obstruct justice, but he callously disregarded the well-known risks of fentanyl trafficking. It has been well documented that fentanyl is a highly potent substance, able to be lethal in doses as little as two milligrams. According to the CDC, synthetic opioids like fentanyl are the primary driver of overdose deaths in the United States. *See* DEA, Facts about Fentanyl (Comparison between 12 months-ending January 31, 2020, and the 12 months-ending January 31, 2021).[2] Despite the notoriety of the dangers of fentanyl, deaths from it remain incredibly high. Indeed, roughly 44,722 people in the United States died from overdose on synthetic opioids such as fentanyl in the 12-month period ending in February 2025. *See* CDC National Center for Health Statistics, *Provisional Drug Overdose Death Counts*.[3] This national crisis has inflicted particularly great harm upon the D.C. community: in 2023, D.C. had the second highest opioid mortality rate in the country, compared to the states. *See* KFF, *Opioid Overdose Death Rates and All Drug Overdose Death Rates per 100,000 Population (Age-Adjusted)* (2023 timeframe).[4] Despite the well-publicized fentanyl overdose epidemic, the defendant chose to disregard the risks and traffic fentanyl into a facility of particularly vulnerable people. As previously referenced, D.C. Jails are particularly vulnerable to drug abuse as an audit revealed that during the period of Vines' offense the rate of

---

[2] https://www.dea.gov/resources/facts-about-fentanyl.
[3] https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm.
[4] https://www.kff.org/other/state-indicator/opioid-overdose-death-rates.

overdose deaths at the facilities were 10 times the national average at U.S. jails. Ex. 1. Accordingly, this factor favors a sentence at the top of the applicable guidelines range.

### B. The Need to Promote Respect for the Law and to Deter the Defendant and Others from This Type of Criminal Conduct

Given Mr. Freshley's conduct in this case, he has an additional period of incarceration ahead of him. Although he will not be at CDF and will serve his sentence at a Bureau of Prisons facility, the government and the Court have an interest in making sure his conduct from CDF does not carry over to the institution where he is designated to sentence. The threat of an additional significant sentence will deter Mr. Freshley from engaging in the type of behavior he did while awaiting trial in his AWIK cases.

Moreover, apart from Mr. Freshley, the smuggling of contraband into DOC facilities is a significant problem. There are at least three other active cases in this courthouse involving the smuggling of controlled substances into the jail. *See* 25-CR-213 (ABJ); 25-CR-87 (TSC); 24-CR-385 (TSC). CDF is an insulated environment where the Court's sentence will have a general deterrent effect. Detainees should know that smuggling dangerous contraband into a DOC facility will result in a significant sentence that will run *consecutive* to any offense that resulted in their detention in the first instance.

### C. The History and Circumstances of the Defendant

Mr. Freshley's criminal history is characterized by violent acts committed while under supervision or even while incarcerated.

In August 2016, Mr. Freshley was arrested for various offenses related to drug and gun possession and charged in D.C. Superior Court case 2016-CF2-12526. Specifically, Mr. Freshley jumped on a bicycle and fled after observing police approaching him. Mr. Freshley rode his bike into an eight-year-old girl before police eventually apprehended him. On Mr. Freshley's person,

police located PCP, cigarettes, and more than $1000. On the ground near the eight-year-old girl was a firearm that had fallen out of his waistband.

Mr. Freshley was released in that case under supervision. However, less than three months later, Mr. Freshley was arrested and charged with Robbery while Armed in D.C. Superior Court case 2016-CF3-18442. On September 5, 2017, Mr. Freshley plead guilty to Unlawful Possession of a Firearm (Prior Conviction) in 2016-CF2-12526 and Second-Degree Theft in 2016-CF3-18442.

The sentence in both cases included probation following incarceration. Mr. Freshley was released from prison on March 29, 2018. On December 28, 2018, and while still on probation in both cases, Mr. Freshley was arrested for Assault with Intent to Kill. Specifically, that day, Mr. Freshley agreed to assist another Clay Terrace associate—Associate 1—in retaliating for a shooting that occurred three days earlier. The associate mistakenly believed an SUV was the same SUV involved in a shooting that killed his cousin three days earlier. Mr. Freshley and another Clay Terrace associate—Associate 2—picked up Associate 1 and drove him past the SUV. Associate 2 was driving, Mr. Freshley was in the passenger seat, and Associate 1 was in the back seat. As the car passed the SUV, Associate 1 fired approximately thirty rounds at the SUV. Inside was a 14-year-old boy and his father. The boy was shot nine times, including in the head, abdomen, chest, and back. And the father sustained gunshot wounds to his leg and hand. Mr. Freshley, Associate 1, and Associate 2 fled the scene. Mr. Freshley was eventually arrested on March 8, 2019, and charged in D.C. Superior Court case 2019-CF1-3262. He was detained at CDF pending trial.

Approximately three months later, Mr. Freshley, Associate 1, and another individual repeatedly stabbed two other detainees with knife-like objects. Mr. Freshley was arrested and charged with Assault with Intent to Kill and Possession of Contraband in Prison in D.C. Superior Court case 2019-CF1-10429. Mr. Freshley awaited trial in both 2019-CF1-3262 and 2019-CF1-

10429 before accepting a plea in 2019-CF1-3262. Specifically, Mr. Freshley agreed to plea guilty to Assault with Intent to Kill and Assault with a Dangerous weapon for his role in the December 2018 shooting of the 14-year-old boy and his father. As part of the plea, 2019-CF1-10429 was dismissed. Mr. Freshley was sentenced to 90 months incarceration. While he was detained pretrial in those cases, he committed the instant offense.

      Mr. Freshley's lengthy and consistent criminal history indicates that he is a danger to the community, and as evidenced by this case and his prior jail stabbing, Mr. Freshley finds a way to continue committing serious offenses even while incarcerated. This factor weighs heavily in favor of a sentence at the top of the applicable guidelines range.

### IV.     Unwarranted Sentencing Disparities

The District of Columbia Circuit has recognized that there will "inevitably . . . [be] sentencing disparities and inequities that can be explained by little more than the identities of the sentencing judges." United States v. Gardellini, 545 F.3d 1089, 1096 (D.C. Cir. 2008); see also United States v. Saez, 444 F.3d 15, 19 (1st Cir. 2006) ("[W]ith different judges sentencing two defendants quite differently, there is no more reason to think that the first one was right than the second."). The Guidelines "reduce unwarranted federal sentencing disparities," Freeman v. United States, 564 U.S. 522, 525 (2011), by "creat[ing] a comprehensive sentencing scheme in which those who commit crimes of similar severity under similar conditions receive similar sentences." Id. at 533.

A sentencing court "necessarily g[ives] significant weight and consideration to the need to avoid unwarranted disparities" by "correctly calculat[ing] and carefully review[ing] the Guidelines range." Gall v. United States, 552 U.S. 38, 54 (2007). "[I]mposing a within-guidelines sentence is the surest way to avoid unwarranted disparities." United States v. White, 737 F.3d 1121, 1145 (7th Cir. 2013).

According to the U.S. Sentencing Commission's Judiciary Sentencing Information, "there were 22 defendants whose primary guideline was §2D1.1 and Fentanyl was the primary drug type, with a Final Offense Level of 15 and a Criminal History Category of IV, after excluding defendants who received a §5K1.1 substantial assistance departure." PSR ¶ 137. All of those defendants received a sentence of imprisonment.  For those defendants, "the average length of imprisonment imposed was 35 month(s) and the median length of imprisonment imposed was 30 month(s)." PSR ¶ 137.

Here, the government's recommended sentence, despite being above the average and median, is warranted. There were at least three smuggling incidents where the contraband was not recovered. That contraband, which the Court can infer included more controlled substances, would likely have driven the guidelines significantly higher. Additionally, Mr. Freshley not only conspired to smuggle in contraband, but he also used a cellphone to attempt to obstruct justice. These facts set Mr. Freshley's crime apart from an average contraband smuggling case and the government's requested sentence is warranted.

## CONCLUSION

The Court should sentence Mr. Freshley to 37 months in prison to run consecutive with his other sentence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


 /s/ *Joshua Gold*
Joshua Gold
Tx Bar No. 24103101
Sarah Santiago
GA Bar No. 724304
Assistant United States Attorneys
United States Attorney's Office for D.C.
601 D Street NW,
Washington, D.C. 20530
E-mail: Joshua.Gold@usdoj.gov
Telephone: (202) 815-8965